IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GERALD CUNNINGHAM,

    Plaintiff,

      v.

FEDERAL AVIATION
ADMINISTRATION,

    Defendant.

CIVIL ACTION FILE
NO. 1:12-CV-3577-TWT

## OPINION AND ORDER

This is an action arising under the Freedom of Information Act. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 11]. For the reasons set forth below, the Defendant's Motion for Summary Judgment [Doc. 11] is GRANTED.

## I. Background

On January 24, 2011, the Federal Aviation Administration ("FAA") awarded back pay to certain supervisors and managers that worked at the Atlanta Tower and Terminal Radar Control Facility ("TRACON") between October 2002 and October 2004. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. 1.) Back pay was limited to

those supervisors and managers  still working at the Atlanta Tower and TRACON at the time the award was made. (Id.)

On October 27, 2011, the Plaintiff Gerald Cunningham, pursuant to the Freedom of Information Act ("FOIA"), requested from the FAA "documents related to payments authorized by the FAA in 2011, to present and former Air Traffic Control Specialists assigned to the Atlanta Tower and TRACON during the years 2002 to 2004." (Pl.'s Resp. to Def.'s Statement of Material Facts ¶ 1.) Specifically, the Plaintiff made seven requests:

Request 1. All documents relied upon by the FAA to justify the back pay payments to supervisors and managers who worked at the Atlanta Tower and TRACON during the period October 2002 through October 2004, and who were presently employed by the FAA.

Request 2. All documents relied upon by the FAA in its decision not to make back pay payments to supervisors and managers who worked at the Atlanta Tower and TRACON during the period October 2002 and October 2004, and who were retired from the FAA.

Request 3. All documents, including but not limited to the request, justification and approval, related to the authorization of a Cash Award to pay the back pay to the supervisors and managers in 2011 as indicated in the chart attached hereto as Exhibit A.

Request 4. The Standard Form 52 - Request for Personnel Action for each individual paid pursuant to the award-pay listed on Exhibit A.

Request 5. The Standard Form 50 - Personnel Action for each individual paid pursuant to the award - back pay listed on Exhibit A.

Request 6. The Standard Form 52 - Request for Personnel Action for each supervisor or manager paid back pay for the 2002-2004 period who was not covered by the award listed in Exhibit A.

Request 7. The Standard Form 50 - Personnel Action for each supervisor or manager paid back pay for the 2002-2004 period who was not covered by the award listed in Exhibit A.

(Compl. ¶ 14, Ex. 1.)  The pro se Plaintiff made the request in anticipation of filing an Age Discrimination in Employment Act case for former FAA employees who did not receive back pay awards.

On October 27, 2011, FAA FOIA Specialist Joann Noonan acknowledged receipt of the FOIA request. (Compl. ¶ 15.) Noonan informed the Plaintiff that the FOIA request was assigned to two organizations within the FAA (1) Air Traffic and (2) Human Resources. (Compl. ¶ 16.) Air Traffic was responsible for Requests 1-3. (Cochran Decl. ¶ 5.) Human Resources was responsible for Requests 4-7. (Kowsky Decl. ¶ 5.)

The first attempt at satisfying the Plaintiff's FOIA request came on December 12, 2011. (Compl. ¶¶ 22-23.) Kimberly Moseley, Acting Executive Director of Human Resource Management Programs and Policies, sent the Plaintiff information intended to satisfy Requests 5 and 7. (Compl. ¶¶ 22-23.) On December 21, 2011, the Plaintiff responded to the December 12, 2011 letter alleging that it did not satisfy Requests 5 and 7, and inquiring about his other requests. (Compl. ¶¶ 24-25.)  Having received no

other contact from the FAA, the Plaintiff sent several memoranda to Noonan between December 12, 2011, and October 15, 2012, requesting status updates regarding the FOIA request, and requesting information regarding the proper procedure for filing an Administrative Appeal. (Compl. ¶¶ 28, 30, 32, 34, 39.)

On October 15, 2012, the Plaintiff filed this action for injunctive relief, alleging a failure by the FAA to make the requested records available.  [Doc. 1].  On November 13, 2012, Walter Cochran ("Cochran"), FAA Vice President Terminal Services, sent the Plaintiff records discovered in response to Requests 1-3 ("Cochran Letter").[1] (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. 1.) In response to Request 1, the Defendant's search produced a memorandum titled "Settlement Agreement Extended to Managers of Atlanta TRACON" ("Settlement Memorandum") as well as the settlement itself.  (Cochran Decl. ¶ 15.) The Settlement Memorandum referenced a list of managers and the amount they each received in the settlement. (Id. ¶ 16.) The Plaintiff informed Cochran that the list was not included in the November 13, 2012 letter. (Id. ¶ 17.) The list has since been released in this litigation as an attachment to the Declaration of Walter R. Cochran. (Id. at Ex. C.) As to Requests 2 and 3, the Defendant's search yielded no results. (Id. ¶¶ 19-20.)

---

[1]These records were obtained following a search described in the Cochran Declaration.

On November 29, 2012, Angela Wilson, FAA Acting Executive Director Human Resource Management Programs and Policies, sent the Plaintiff records discovered in response to Requests 4-7 ("Wilson Letter").[2] (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. 2.) Wilson indicated that the SF-52 forms referenced in Requests 4 and 6 were not saved because they were generated "in Human Resources instead of the employees' Regional Office." (Id.) Thus, no records were delivered in response to Requests 4 and 6. One SF-50 form was found in response to Request 5 and forty-five SF-50 forms were found in response to Request 7. (Id.) Initially, the SF-50 forms provided in response to Request 7 were marked "NOT AN OFFICIAL DOCUMENT," and they were redacted to exclude certain personal information under the FOIA exemption in 5 U.S.C. § 552(b)(6).[3] (Id. at Ex. 3.) The Plaintiff took issue with both the unofficial designation and the redacted information concerning retirement eligibility.  (Id.)  The Defendant has since provided the Plaintiff with official records that include the previously omitted information concerning retirement eligibility. (Kowsky Decl. ¶¶ 29-30, 31.)

-----------------------

[2]These records were obtained following a search described in the Kowsky Declaration.

[3]Excluded information included social security numbers, dates of birth, veteran's preference, life insurance plan selected, and retirement plan. (Kowsky Decl. ¶ 29.)

On December 13, 2012, the Plaintiff responded with an e-mail memorandum indicating that SF-50 forms for five employees had not been provided. (Id. at Attach. E.) Another search was conducted for the five names supplied by the Plaintiff. (Id. ¶ 27.) SF-50 forms were discovered for two out of the five, and on December 19, 2012, the Defendant submitted those SF-50 forms to the Plaintiff.[4] (Id. ¶ 26.) The Defendant also provided "screen shots" with information regarding payments to the three employees for whom SF-50 forms were not generated. (Id. at Attach. F.)   The Defendant moves for summary judgment on the grounds that it has adequately responded to the Plaintiff's FOIA requests.

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317,

---

[4]The other three had been paid directly through Accounting and so no SF-50 form was generated for them. (Kowsky Decl. ¶ 22.)

323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir.1990).

## III. <u>Discussion</u>

The FOIA provides a private right of action in a district court of the United States against an agency to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).  FOIA cases generally reduce to two issues. The first issue is whether the agency conducted a reasonable search and produced the resulting records; and the second issue is whether the agency properly withheld documents, or redacted documents, pursuant to an applicable exemption. <u>See</u> <u>White v. FBI</u>, No. 1:09-CV-421-RLV, 2010 U.S. Dist. LEXIS 144716, at *11 (N.D. Ga. May 7, 2010). Thus, the government may prevail on a motion for summary judgment in an FOIA action if it "show[s] that its search was adequate and that any withheld documents fall within a proper exemption to the FOIA." <u>Id.</u> If the defendant has provided the plaintiff, in response to the plaintiff's FOIA request, all nonexempt

records discovered through an adequate search, the issue is moot. See Chilivis v. SEC, 673 F.2d 1205, 1209-10 (11th Cir. 1982).

The Plaintiff raised three distinct, yet related claims. First, he argues that the Defendant has failed to conduct an adequate search under the FOIA and produce the relevant records discovered. Second, he argues that the Defendant has acted in bad faith by failing to retain certain records and delaying the production of records in response to the Plaintiff's FOIA request. Third, he argues that this Court should permit limited discovery into the adequacy of the Defendant's search. Each will be discussed in turn.

A.    Adequacy of the Search

The adequacy of a search is judged by a reasonableness standard. See Ray v. United States Dep't of Justice, 908 F.2d 1549, 1558 (11th Cir. 1990), *rev'd on other grounds sub nom.* United States Dep't of State v. Ray, 502 U.S. 164 (1991). A search will be considered adequate under the FOIA if "the agency . . . show[s] beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." Id. "The government agency may meet this burden by producing affidavits of responsible officials 'so long as the affidavits are relatively detailed, nonconclusory, and submitted in good faith.'" Id. If the government meets this burden by proving that the search was reasonable "then the burden shifts to the

requester to rebut the agency's evidence by showing that the search was not reasonable or was not conducted in good faith." Id. "The FOIA does not require an agency to exhaust all files which conceivably could contain relevant information." Id. at 1558-59.

The Defendant submitted two declarations detailing the searches conducted in response to the Plaintiff's seven FOIA requests.  Requests 1-3 were assigned to Terminal Services for response. (Cochran Decl. ¶ 5.) Walter R. Cochran, Vice President of Terminal Services in the Air Traffic Organization at the FAA, attested to the following. Four different departments within the FAA were involved in the search: Terminal Field Services (AJT-6), Terminal Finance (AJT-4), the Requirements Office of Field Service and Operations (AJT-62), and the Operations Account Group (AJT-41). (Id. ¶¶ 9-11.) AJT personnel searched paper files and electronic files on both their individual computers and on their networks. (Id. ¶ 12.) Search terms were crafted based on the content requested by the Plaintiff as well as the relevant dates.[5] (Id.) On November 13, 2012, the records discovered were sent to the Plaintiff. (Id. ¶ 14.) Cochran stated that all files "reasonably expected to contain the requested records" were searched. (Id. ¶ 22.)

---

[5]The personnel used the search term "A80," which is shorthand to mean the payments to air traffic control employees at the Atlanta Tower and TRACON. (Cochran Decl. ¶ 12.)

Requests 4-7 were assigned to the FAA Human Resources organization for response. (Kowsky Decl. ¶ 5.) Kathleen Kowsky, employed by the FAA as Federal Personnel Payroll System Program Manager, attested to the following. The Federal Personnel Payroll System (FPPS) contains electronic personnel and payroll records, which are maintained by the Department of Interior's (DOI) National Business Center. (Id. ¶ 3.) Requests 4 and 6 requested certain SF-52 forms, whereas Requests 5 and 7 requested certain SF-50 forms. (Id. ¶¶ 6-9.) Thus, different search protocols applied to each. Regarding Requests 4 and 6, the SF-52 forms were not saved because they were generated "in headquarter's Human Resources instead of the employees' Regional Office." (Id. ¶¶ 14, 16.) Thus, any search would have been futile.

Regarding Requests 5 and 7, a search was done using the Datamart Query System, maintained by the DOI. (Id. ¶ 19.) The filters were selected based on the information requested by the Plaintiff.[6] (Id. ¶ 20.) The search produced both employees whose payment was processed through the FPPS and those paid directly through Accounting. (Id. ¶¶ 22-23.) The difference between the two was that SF-50

---

[6]The filters used for the spreadsheet were: (1) Nature of Action- Code 849, Cash Award. (2) The A80 (Atlanta TRACON) facility code. (3) An effective date of 06/28/11, the actual date the payments were processed in FPPS, during pay period 2011-14 (June 19-July 2, 2011). Time and attendance and payroll actions for that pay period were processed the week of July 4-8, 2011, and the actual pay dates for employees were July 12 or 13, 2011. (4) The employees' grades, showing that they were Air Traffic Managers and Supervisors (MSS). (Kowsky Decl. ¶ 20.)

forms were generated only for the employees whose payment was processed through the FPPS. (<u>Id.</u> ¶ 22.) On November 29, 2012, the discovered records were sent to the Plaintiff. (<u>Id.</u> at Attach. D.) The Plaintiff responded with an e-mail memorandum indicating that SF-50 forms for five employees had not been provided. (<u>Id.</u> at Attach. E.) Another search was conducted within the FPPS using the five names supplied by the Plaintiff. (<u>Id.</u> ¶ 27.)

The Court finds the Defendant's searches adequate to satisfy its obligations under the FOIA.  This Court recently reached a similar conclusion in <u>White</u>, 2010 U.S. Dist. LEXIS 144716. In that case, the plaintiff requested information regarding his missing brother from the DEA. <u>Id.</u> at *1. In granting the defendant's motion for summary judgment, and denying the plaintiff's discovery request, the Court looked to two declarations regarding the search. <u>Id.</u> at *14-21. These declarations stated that the DEA searched within the Investigative Reporting and Filing System (IRFS), the only database the DEA found likely to contain information relevant to the plaintiff's request. <u>Id.</u> at *14-19. Further, the declarations stated that the search terms included the name of the plaintiff's missing brother, as well as his social security number and date of birth. <u>Id</u>. The search yielded no results. <u>Id.</u>  Here, the searches relating to the Plaintiff's requests were conducted in databases and files reasonably expected to

contain relevant records. The searches were also tailored to the content that the Plaintiff requested, as well as the relevant dates stipulated in his request.

The Plaintiff makes several arguments challenging the adequacy of the search. First, the Plaintiff alleges that the two documents primarily relied upon by the Defendant in support of its motion have not been authenticated. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 12-13.) The Plaintiff is referring to the Cochran Letter regarding Requests 1-3 and the Wilson Letter regarding Requests 4-7. (Id.) The Cochran Declaration authenticates the Cochran Letter and the Kowsky Declaration authenticates the Wilson Letter. (Cochran Decl. ¶ 14; Kowsky Decl. ¶ 13.)

Second, the Plaintiff, citing Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999), argues that the Defendant's failure to produce any records for a number of his requests is grounds for challenging the adequacy of the search. The fallacy in this argument is its focus on the product of the search rather than the process. "Determining whether an agency conducted an adequate search does not hinge on 'whether there might exist any other documents possibly responsive to the request, but whether the search for those documents was adequate.'" White, 2010 U.S. Dist. LEXIS 144716, at *14 (citing Steinberg v. United States Dep't of Justice, 23 F.3d 548, 551, 306 U.S. App. D.C. 240 (D.C. Cir. 1994)). In White, this Court rejected the argument that a search is inadequate merely because no records were

found. See id.  The Defendant has established that there is no genuine issue of material fact concerning the nature of the Defendant's search, nor a credible legal claim against its adequacy.

      B.    Destruction of Records and Delay

      The Plaintiff alleges that the Defendant has acted in bad faith. First, the Plaintiff argues that, contrary to FAA policy, the SF-52 forms were not saved and that this merits "resolution by the Court." (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 15-16.) Second, the Plaintiff argues that the FAA unnecessarily delayed producing the records. (Id. at 17-20.) As a threshold matter, it is unclear whether Plaintiff raises both arguments as separate claims or only to support the claim that the Defendant's search was inadequate. If intended as independent claims, both fail since the Court lacks jurisdiction under the FOIA to provide an additional remedy for unauthorized destruction or delayed production of records. See Ray, 908 F.2d at 1560 ("The remedies that courts are authorized to grant in FOIA cases are expressly enumerated in FOIA, and they do not include the issuance of an injunction against related agency action."). As stated, the FOIA only provides a private right of action for the wrongful withholding of records, and it limits the remedy to injunctive relief and associated litigation costs. See 5 U.S.C. § 552(a)(4)(B); 5 U.S.C. § 552 (a)(4)(E)(i). Conversely,

if the Plaintiff did not intend both as separate claims, neither argument supports the proposition that the Defendant's search was inadequate.

First, the Defendant's failure to save the SF-52 forms is immaterial to the adequacy of the search itself. See Ray, 908 F.2d at 1559 ("[T]he fact that a document once existed does not mean that it now exists . . . the [agency] is not required by [FOIA] to account for documents which the requester has in some way identified if it has made a diligent search for those documents."). The fact that the SF-52 forms, if still in existence, would have appeared during an adequate search does not render the search inadequate. Even if, as the Plaintiff alleges, the SF-52 forms contained important information, "it is not necessary 'to create a document that does not exist in order to satisfy a [FOIA] request.'" Id. Further undermining the Plaintiff's argument is that the SF-52 forms were not destroyed following his FOIA request. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. 2.) They were never saved to begin with. (Id.)

Second, the Defendant's delay in providing the Plaintiff with the requested records is, without more, insufficient to show that the search was conducted in bad faith. In FOIA cases, "[r]ather than announcing that a certain inference can always be drawn from such a late production . . . the better course is to evaluate the reasoning behind the delay." Miccosukee Tribe of Indians of Fla. v. United States, 516 F.3d 1235, 1257 (11th Cir. 2008); see also Lee v. United States Attorney for the S. Dist. of

Fla., 289 Fed. Appx. 377, 380-381 (11th Cir. 2008) ("[T]he fact that defendants did not respond to Lee's request within 20 days of receipt does not support his claim of bad faith . . . Defendants explained the reasons for any delays."). The Defendant has stated that the delay was caused by an excessive workload. (Cochran Decl. ¶ 23.) Regardless, given the detailed description of the searches, the delay itself does nothing to undermine their adequacy.

C.   Discovery

The Plaintiff requests an opportunity for limited discovery concerning the adequacy of the search. "In FOIA cases, discovery is a question of fact which must be determined from the agency's affidavit." Friedman v. FBI, 605 F. Supp. 306, 316 (N.D. Ga. 1984). "If government affidavits in FOIA cases satisfy the court that the search was adequate and complete, the court may deny discovery." Id. Discovery may be permitted "if the record demonstrates the presence of a factual dispute." Id.

Here, nothing in the Defendant's declarations suggests a need for discovery. There is no factual inconsistency between the declarations or any other indication of bad faith that would call into question their credibility. The Plaintiff's claim amounts to speculation that contradictory information may surface during discovery. This is insufficient.

IV. <u>Conclusion</u>

For the reasons set forth above, the Court GRANTS the Defendant's Motion for Summary Judgment [Doc. 11].   The Plaintiff's Motion to Exclude Court's Consideration of  Reply Brief [Doc.  18] is DENIED.  The Defendant's Motion for Leave to File Declarations with Reply Brief [Doc.  19] is GRANTED.

SO ORDERED, this 29 day of August, 2013.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge